NEW-YORK.
Nov. 1822,

The People
vs.
Wm. Robert-
son and Orrin
J. Ferris.

## The People *vs.* William Robertson and Orrin J. Ferris.
### *Grand Larceny.*

THE prisoners were charged with stealing from the store of Haggerty & Austin, on the 16th or 17th of June last, a large quantity of fancy goods ; they were taken and deposited on Ward's Island, in the East River, about 12 miles from New York.

In consequence of information obtained at the police office, that Ward's Island was infested with thieves, who made it a depository for their plunder, Mr. Hedden, the high constable, and others, went up to the Island for the purpose of breaking up this establishment, and securing those concerned in it.

They found, on their arrival at the Island, that the party had left it in the morning, for the city, and had not yet returned ; they waited until near evening when they saw the party approach the shore ; they were immediately arrested and secured in irons.

Among the party were the two prisoners. They were brought to the police office and committed for trial. A

part of the goods stolen from Haggerty & Austin, and identified by them, were found in the house, concealed in a trunk. Part of these goods had been sent to a Mr. Cochrane, who keeps a retail dry good store in Greenwich street, to sell upon commission ; under suspicious circumstances, and who was tried on a charge for receiving them, knowing they were stolen.

NEW-YORK, Nov. 1822.

The People *vs.* Wm. Robertson and Orrin J. Ferris.

*Maxwell, District Attorney,* now offered to read the examination of Ferris, taken by the committing magistrate.

*Price* and *Anthon,* counsel for the prisoners, objected, and offered Mr. Hays to prove that promises of favor was held out by Mr. Hedden.

He testified, that justice Hedden called Ferris's wife into a room, and told her, that "if what she told him was true, it was better for her husband to confess." That Mrs. Ferris came to deponent and asked him, " can we put confidence in him," or, "can we confide in him." Hays answered her, "yes, you may confide in Justice Hedden."

*Maxwell,* then called Justice Hedden to disprove Hays : he testified that he had told the woman, " if what she said to him was true, her husband had better confess :" but testified that he had never held out any inducement to fear, or favor ; but, on the contrary, the next day, when the examination was taken, told him, that nothing he had said before, should induce him to expect any favor ; but that he had all the facts, and it would be better to tell them truly, for if he did not, he would detect him in a falsehood. He then examined him in the usual manner.

*Maxwell* argued the question at some length. He contended there was no hope of favor held out to the prisoner ; that telling his wife, " if what she said to him was " true, it would be better for her husband to confess," could

NEW-YORK, not be construed into an offer of favor : here was no offer
Nov. 1822. whatever made, nothing was promised, either directly or
The People indirectly, no threat or menace was used, or any undue
Wm. Robert-influence whatever exercised. The examination was made
son and Orrin the next day, time enough to extinguish any spark of
J. Ferris. hope of favor he might have thought was held out to
him. The conversation was with the wife, and not the
husband : nothing directly was said to *him* ; that if any
expectation of that kind was anticipated by the prisoner,
he ought to have been satisfied the next morning that no
favor was intended, when the conversation in relation to
the arrest and examination took place with the magistrate.

The counsel for the prisoner was about replying, when
they were told by the court it was unnecessary.

*By the Court.* " It is necessary to make the examina-
" tion of a prisoner evidence upon his trial ; that it should
" be made without any menace or terror held out to him
" or any species of undue influence used ; it must be free
" and voluntary. It must not be induced by the flattery
" of hope, or the fear of torture.

" How is the case before us ? A number of officers,
" with Justice Hedden, go to Ward's Island, they there ar-
" rest the prisoners, and all others they find in the house ;
" they put them in irons preparatory to taking them to the
" city ; a conversation between Justice Hedden and the
Vide 5. St. " wife of one of the prisoners takes place ; in this con-
Tr. 17. 2 Salk. " versation he tells her, ' if what she has told him was
.634.   Foster, " true, it would be better for her husband to confess.' The
240.
Leach Cr. " import of this question to the understanding of Mrs. Fer-
L.   Cas.  2d
edit. 223. 3d " ris, can be understood, from what she said afterwards to
edit. 298. 1 " Mr. Hays ; she asks him if Justice Hedden could be
Hale  P.  C.
284. " confided in, and she received a reply, that he could.
" Now the court thinks this was holding out an expecta-
" tion of favor, inconsistent with the free and voluntary

"spirit in which a confession should be made; we think
"the mind of the prisoner was unduly influenced by what
" was said to him ; nor do we think it alters the case, that
"the examination was not taken until the next morning,
"that influence continued to exist throughout the night,
"and cannot be fairly supposed removed, by what was
" said to him at that time. The court there decides, the
'examination cannot be read."

NEW YORK, Nov. 1822.

The People vs. Wm. Robertson and Orrin J. Ferris.

*Maxwell* observed, upon this decision, he had not sufficient evidence to support the charge against Ferris, and would not trouble the court by offering any more; and would consent to an acquittal. The proof appearing positive against Robertson, he was found guilty, and Ferris acquitted.

NOTE.—The following important and appropriate remarks on this point, cannot be too carefully attended to : it is found in Gilb. Evid. by Loft. p. 137. Speaking of confession, he says, " These rules reflect the " brightest lustre on the English law, which benignly considers, that " the human mind, under the pressure of calamity, is easily seduced " and liable, in the alarm of danger, to acknowledge indiscriminately " a falsehood or a truth, as if different agitations may prevail; and, " therefore a confession, whether made upon official examination or " in discourse with private persons, which is obtained from a defen- " dant by the impression of hope or fear, however slight the impres- " sion may be implanted, is not admissible evidence ; for the law will " not suffer the prisoner to be made the deluded instrument of his " own conviction."

The following are the leading authorities upon this point:
" Confession obtained in consequence of promises or threats, cannot be
   " given in evidence, but any facts resulting from such inadmissible
   " confession may be received." But they must be given in evidence,
   " without the aid of the confession. Warickshall's case, Leach's
   Cases, vol. 1. p. 298. 3d edit. And see Rex. v. Butler, Maidstone
   Summer Assizes, 1798.

A confession induced by saying, " unless you give me a more satisfactory

NEW   YORK,
Nov. 1822.

" account I will take you before a magistrate ;" or by saying, " tell " me where the things are and I will be favorable to you," cannot be given in evidence. Ibid. vol. 1. p. 325.

" The confession of a prisoner made under the expectation of favor,when " leading to other facts, independent of such confession, such fact " may be received in evidence." Contra, when made under the offer of favor. Jackson's case, City Hall Rec. vol. 1. p. 28.

On a confession, made under the influence of threats, which might have operated in the examination in the police, the jury will be justified in rejecting such confession. Ibid, vol. 1. p. 149.

Upon a charge of conspiracy to defraud ; one of the defendants was arrested and permitted to remain at the house of a friend. He was advised by one of the officers of the Bank defrauded, to make a full disclosure against the others, and that he should be made state evi dence: no threat being used, and the examinant himself acknowledged it was voluntarily made ; yet, it was held, the confession could not be read as evidence upon his trial. Ibid, vol. 3. p. 81. ; and see the case of Peter Bowerhau. Ibid, vol. 4. p. 136.